FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ DEC 1 9 2007 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | IN RE NEWSDAY |
| ROBERT BRENNAN | 05-CR-747; | ) |
| ROBERT GARCIA | 06-CR-169; | ) MEMORANDUM & ORDER |
| RICHARD CZARK | 06-CR-170; | ) |
| LOUIS SITO | 06-CR-171; | ) REGARDING RESTITUTION |
| GUS ACOSTA | 06-CR-172; | ) |
| ED SMITH | 06-CR-173; | ) |
| DENNIS SPRINGER | 06-CR-334; | ) |
| JOHN FAIELLA | 06-CR-335; | ) |
| DOROTHY MCKILLOP | 06-CR-336; | ) |
| | | ) |
| Defendants. | ) |

JACK B. WEINSTEIN, Senior District Judge:

I.

Defendants in the above-captioned cases were predominantly long-term employees of Newsday and Hoy, two newspapers which were wholly-owned subsidiaries of the Tribune Company during the relevant period of time. These defendants were involved in defrauding thousands of advertisers for over $100 million who advertised in Newsday and Hoy. Eight of the nine defendants have pled guilty to conspiracy to commit mail fraud under sections 1341 and 1349 of Title 18 of the United States Code. Gus Acosta ("Acosta") is the only defendant who pled guilty to the substantive offense – mail fraud in violation of section 1349 of Title 18. All defendants, except for John Faiella ("Faiella") and Dorothy McKillop ("McKillop") are scheduled to be sentenced by the court on December 20, 2007; Faiella and McKillop are scheduled to be sentenced on January 7, 2008.

1

Eight of the nine defendants have received letters pursuant to section 5K of the United States Sentencing Guidelines authorizing a sentence below the guidelines. <u>See</u> Letter dated Dec. 18, 2007 by Assistant United States Attorney Cynthia M. Monaco (Gov. Dec. 18. Ltr.) at 1. Richard Czark ("Czark") will not be receiving a letter. <u>See</u> <u>id.</u>

## II.

On September 24, 2007, the court issued an order in preparation for the then-scheduled October 3, 2007 sentencing. <u>See</u> Order dated Sept. 24, 2007. That order provided as follows:

1. The Court is considering imposing fines greater than provided for by the guidelines in light of the alleged heavy damages incurred by advertisers. <u>See</u> Fed. R. Crim. P. 32(h); <u>Burns v. United States</u>, 501 U.S. 129, 135-36 (1991); <u>United States v. Anati</u>, 457 F.3d 233, 235-36 (2006) (requiring district courts to give notice before imposing a non-Guideline sentence). The Court is considering incarceration for periods less than those provided by the guidelines in light of higher fines.

2. The Court is troubled by the lack of clarity respecting the relative culpability, if it exists, of those prosecuted compared to those of higher authority and the institutions themselves.

3. If the government is not seeking restitution in light of civil settlements and the difficulty in determining specific amounts, a certification to that effect from the government shall be promptly provided. See U.S.S.G. § 8B1.1(b)(2)(B).

4. The government shall supply to the Court copies of plea agreements and 5K1 letters promptly so that they can be considered before the sentence.

5. In accordance with the practice of this court, a conference has been held with two judges, the Chief Probation Officer, and the sentencing judge. No decision on the sentences will be made until all parties and interested persons have been heard at the sentencing hearing.

6. Representatives of the Tribune Company, Newsday and Hoy shall be present at each of the sentences.

<u>Id.</u> At the request of the government, the October 3, 2007 sentencing was adjourned to

December 20, 2007.

No communication responding to the court's order of September 24, 2007 was received.

Three days before the December 20, 2007 scheduled sentencing, the court issued another pre-sentence order, on December 17, 2007, noting that the court had not received a response from the government on the issue raised in paragraph three of the September 24 order. See Order dated Dec. 17, 2007 at 2. The order requested that the government respond to the following issues as well as those posed by the September 24, 2007 order:

3.  Does any payment by the Tribune Company, Hoy and Newsday in civil proceedings waive mandatory criminal restitution for the above-captioned defendants? See 18 U.S.C. § 3664(f)(1)(B) ("In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution.").

4.  Is the government prepared to submit calculation of the amount of restitution that the above-captioned defendants must pay jointly or individually?

5.  Should the court order joint and several restitution by all nine defendants? See 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."). If not, how shall liability be apportioned?

6.  Has the government identified the victims of the defendants' crimes and the amounts due to them, and will the government provide that information to the court at the December 20, 2007 hearing? See 18 U.S.C. § 3663A(c)(1) ("This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense . . . (B) in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.") (emphasis added).

7.  What is the government's position, if any, as to whether restitution in this case is impracticable or whether its benefits are outweighed by its burdens? See 18 U.S.C. § 3663A(c)(3) ("This section shall not apply in the case of an offense described in paragraph (1)(A)(ii) if the court finds, from facts on the

3

record, that — (A) the number of identifiable victims is so large as to make restitution impracticable; or (B) determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.").

8. Is the government prepared to go forward with evidence of the above and other relevant issues at the December 20, 2007 sentencing? While it is apparently not essential to order restitution at the time of the sentencing, the court prefers to not postpone a decision on restitution.

9. Is the government prepared to explain why Newsday and Hoy and their owners are not being prosecuted; are they making a contribution to the restitution fund, and, if so, on what theory?

By letter dated December 18, 2007 (delivered to the court at 5:00 p.m. that day), the government informed the court that it "is not seeking restitution from the nine individual defendants because a mechanism to ensure the repayment of aggrieved advertisers has been established and funded . . . ." See Gov. Dec. 18 Ltr. at 1. The government letter also informed the court:

> On December 17, 2007, an agreement between the United States Attorney's Office and Tribune Company, the parent to Newsday, Inc. ("Newsday") and Hoy Publications, LLC ("Hoy") was fully executed. A copy of that agreement is attached hereto. Under the terms of this agreement, Newsday and Hoy have accepted responsibility for the unlawful circulation-reporting practices by those publications which were used in connection with setting advertising rates.

> In addition to ongoing cooperation with the government, and the adoption of remedial measures outlined in the agreement, Newsday and Hoy have agreed to pay forfeiture to the United States in the amount of $15 million. This forfeiture is separate from the efforts of Newsday and Hoy to repay advertisers for the government their efforts to contact individuals and companies whom they have identified as having taken advertisements in their papers and have offered repayment according to a specified formula. To date, according to representations by Tribune Company's counsel, approximately $90 million has been repaid. The terms of the agreement with the United States Attorney's Office specify that any additional advertisers not identified previously may apply to the Department of Justice restitution to be supplied from the forfeited amount. In light of this mechanism and the difficulty in determining whether additional restitution is owed to any victims

4

who have yet to come forward beyond this mechanism, the government respectfully submits that pursuant to 18 U.S.C. § 3663A(c)(3) restitution should not be ordered against the nine individual defendants.

With regard to the Court's request that the government explain why Newsday and Hoy and their owners are not being prosecuted, the government respectfully refers the Court to the agreement entered into between the government and those entities which sets forth the resolution of the matter. The government has brought charges against all individuals against whom it has sufficient evidence. . . .

Id. at 2.

### III.

### *A.*

Since this is the third order by the court requesting that the government respond to issues of restitution in these cases, it is important to restate some principles of the law related to restitution which may assist the government in preparing its response.

The concept of restitution in criminal cases is embedded in common law and is often thought of as an equitable remedy. See Blackstone, COMMMENTARIES ON THE LAWS OF ENGLAND 356 (1769) ("[I]f any person be convicted of larceny by the evidence of the party robbed, he shall have full restitution of his money, goods, and chattels, or the value of them out of the offender's goods, if [he] has any, by the writ to be granted by the justices. And this writ of restitution shall reach the goods so stolen, notwithstanding the property of them in endeavoured to be altered by sale in market overt"); Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993) ("'equitable relief' can also refer to those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages).").

In 1925, Congress granted federal courts authority to suspend sentences, place defendants on probation, and order them to pay restitution as a condition of probation. See Law of Mar. 4,

1925, ch. 521, 43 Stat. 1259, codified at 18 U.S.C. § 3651 (1925) (repealed 1984). Prior to this statutory scheme, the issue of restitution was left primarily to the discretion of federal district judges who had the authority to impose restitution in lieu of suspending sentences. See H. Rep. 68-1377, at 3 (1925) ("the United States district courts suspended sentence in many instances, and certain courts used a form of probation, though without legislative authority, place defendant under the supervision of state probation officers or volunteers. These officers "greatly increased sums collected for fines, restitution, and especially family support.").

Congress continued to emphasize the importance of restitution in criminal cases. In 1982, it passed the Victim and Witness Protection Act of 1982 ("VWPA"), vesting federal courts with the general discretion to order restitution in any criminal case arising out of Title 18 of the United States Code or air piracy cases. See P.L. 97-291, 96 Stat. 1253 (1982), codified at 18 U.S.C. § 3663. In 1994, Congress passed the Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA"), which established mandatory restitution for certain sexual abuse crimes. See P.L. 103-322, 108 Stat. 1904, 1906, 1928, codified at 18 U.S.C. §§ 2248, 2259, and 2264 respectively. Congress acted again in 1996 and passed the Mandatory Victim Restitution Act ("MVRA"), making restitution mandatory upon conviction of crimes of violence codified in Title 18 of the United States Code, as well as crimes against property, including fraud.

### B.

Sections 3663A of Title 18 of the United States Code makes restitution in some criminal cases mandatory; section 3664 provides the mechanism for the enforcement. See 18 U.S.C. § 3663A(d) ("An order of restitution under this section shall be issued and enforced in accordance with section 3664.")

Under § 3663A(c)(1), restitution is mandatory for the following crimes: (1) a crime of violence, as defined in 18 U.S.C. § 16; (2) an offense against property under Title 18, including any offense committed by fraud or deceit; or (3) an offense described in 18 U.S.C. § 1365 (relating to tampering with consumer products).

All defendants in these cases, except for Acosta, have pled guilty to conspiracy to commit mail fraud under 18 U.S.C. §§1341 and 1349. Acosta has pled guilty to mail fraud under 18 U.S.C. § 1341. Conspiracy to commit a crime under Title 18 for a substantive crime under Title 18, or conspiracy to commit a crime under Title 18 for a substantive crime under a different title, makes restitution mandatory under section 3663A. See United States v. Quarrell, 310 F.3d 664, 677 (10th Cir. 2002) ("The [defendants] also argue [that] the MVRA is inapplicable because a violation of ARPA, is not an offense 'under this title,' referring to Title 18. However, the [defendants] were also convicted of conspiracy under 18 U.S.C. § 371, which is an offense under Title 18. The [defendants'] conspiracy conviction satisfied the 'under this title' requirement of the MVRA."). Because all defendants in these cases (except for Acosta) have pled guilty to conspiracy under Title 18, and Acosta has pled guilty to a substantive crime under Title 18 (mail fraud), restitution is mandatory in these cases. See 18 U.S.C. § 3663A(c)(1).

Under 18 U.S.C. § 3663A(c)(1)(B), the crime under Title 18 must have "an identifiable victim or victims [who] has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). The Court of Appeals for the Second Circuit has held that mandatory restitution "can only be imposed to the extent that the victims of a crime are actually identified." United States v. Catoggio, 326 F.3d 323, 328 (2d Cir. 2003) (citing 18 U.S.C. § 3663A(c)(1)(B)). "A lump sum restitution order entered without any identification of victims and their actual losses is

7

not permissible." <u>United States v. Zakhary</u>, 357 F.3d 186, 190 (2d Cir. 2004) (remanding to the district court its lump sum restitution order of $67,000 so that it could identify victims of credit card fraud).

In <u>Catoggio</u>, the Court of Appeals affirmed an order by a judge of this district ordering mandatory restitution in a case involving the loss of $192 million and about 10,000 victims. 326 F.3d 323. The court's language is instructive:

> At the outset, we recognize that the district court's approach to restitution in this case represents a creative approach to a difficult problem. [Defendant's] crime resulted in thousands of victims and large losses. Although those victims and their losses are identifiable, it takes time to unravel the effects of a complex scheme of the type used by [defendant] and his co-conspirators to perpetrate this fraud. The district court apparently set restitution in an amount agreed upon by defendant and probably exceeding any sum defendant will ever pay. Further, the court obviously knew that it would take time for the government to discover the identities of the victims and their actual losses, but believed restitution was an important part of [defendant's] sentence. . . .

> [W]e do not agree, for example, that the victims of [defendant's] crime were unidentifiable. While the [Pre-Sentence Report] indicated that it would be impractical to request affidavits of loss from each victim, it also noted that the government was "in possession of trading records which identify the victims and their respective losses." Further, at oral argument before us the government indicated that a 1,700-page victim restitution report was submitted to the district court last summer. According to the government, this report detailed $192 million in actual losses to approximately 10,000 victims. Therefore, [defendant's] claim that the victims are unidentifiable is at best a disingenuous effort to avoid a consequence of his criminal behavior.

<u>Id.</u> at 327.

Under § 3664(a), the sentencing court:

> [S]hall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant. If the number or identity of victims

cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court.

18 U.S.C. § 3664(a).

The court is required to disclose this report to the defendants and the government. See 18 U.S.C. § 3663A(b). To facilitate the preparation of this report, section 3664(d)(1) provides that the government, upon request of the probation officer, consult with victims and, not later than sixty days before the sentencing date, detail any losses subject to restitution. See 18 U.S.C. § 3664(d)(1). Section 3664(d)(2) requires that the probation officer, prior to submitting a report to the court, shall, to the extent practicable, provide notice of the court proceedings to all victims and afford them the opportunity to submit an affidavit detailing any losses subject to restitution. See 18 U.S.C. § 3664(d)(2). Section 3664(d)(4) states: "[a]fter reviewing the report of the probation officer, the court may require additional documentation or hear testimony." 18 U.S.C. § 3664(d)(4).

Under § 3664(d)(5), if the losses of victims are not ascertainable by 10 days prior to sentencing, the United Sates Attorney or the probation officer "shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5).

Section 3663A(c)(3) provides that mandatory restitution cannot be ordered if the court finds from facts on the record that:

(A)  the number of identifiable victims is so large as to make restitution impracticable; or

(B)  determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

18 U.S.C. § 3663A(c)(3). This complexity exception is inapplicable to crimes of violence, but is applicable to the crimes of conspiracy, fraud and deceit, charged in this case.

The complexity of issues has not discouraged district courts from ordering restitution in criminal cases – as required by Congress. For instance, in <u>United States v. Cienfuegos</u>, the Court of Appeals for the Ninth Circuit found that "the district court abused its discretion by relying on the perceived complexity of the restitution determination and the availability of a more suitable forum to decline to order restitution for future lost income." 462 F.3d 1160, 1168 (9th Cir. 2006). The court further noted that "[t]he MVRA contemplates that some calculations may be complex, and, accordingly, authorizes the district court to "require additional documentation or hear testimony," or to "refer any issue arising in connection with a proposed order of restitution to a magistrate judge or a special master for proposed findings of fact." <u>Id.</u> (citations omitted). Also see <u>United States v. Khan</u>, 193 Fed. Appx. 700, 702 (9th Cir. 2006) (remanding to the district court because it did not clearly make determination that calculation of such victims' actual losses would complicate or prolong sentencing process to extent outweighing need to provide restitution).

In <u>In re W.R. Huff Asset Management Co., LLC.</u>, the Court of Appeals for the Second Circuit ruled that the sentencing court was within its discretion when it approved a settlement agreement establishing a $715 million fund to compensate victims of securities and bank fraud, although that amount would not ensure full restitution under the MVRA. 409 F.3d 555, 563 (2d Cir. 2005). The court held that the sentencing court did not abuse its discretion because there were potentially tens of thousands of victims, and the complexity of resolving multitude of factual and causal issues to determine amount of losses of those victims would extend sentencing

process inordinately. Id.

In Catoggio, which involved $193 million and 10,000 victims, the Court of Appeals for the Second Circuit found "meritless [defendant's] argument that the number of victims is too large for restitution to be practicable and that the issues involved in determining restitution are so complex that the need for restitution is outweighed by the burden on the sentencing process." 326 F.3d at 328.

Section 3664(d)(6) provides the court with a mechanism to overcome what may initially seem impracticable issues: "[t]he court may refer any issue arising in connection with a proposed order of restitution to a magistrate judge or special master for proposed findings of fact and recommendations as to disposition, subject to a de novo determination of the issue by the court." 18 U.S.C. § 3664(4)(6). See also United States v. Salim, 287 F. Supp. 2d 250, 258 (S.D.N.Y. 2003) ("[P]ursuant to its authority under 18 U.S.C. § 3664(d)(6), the Court appointed Conrad Berenson, Ph.D., M.B.A., and Professor Emeritus, to act as Special Master to assist the Court in determining the appropriate amount of restitution in this case, and ordered the Government to provide to the Special Master all information necessary for determination of a recommended restitution amount.").

Based on the present record, the court does not find that the number of victims is so large as to make restitution impracticable or that determining complex issues of fact would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process. The parties may seek to add to the record in an attempt to establish 18 U.S.C. § 3663A(c)(3)(A) or (B). Until that record is made, the restitution process shall go forward.

## C.

Under section 3664(f)(1)(B), the court may not take into account the fact that a victim

may have been compensated by insurance, forfeiture, civil litigation, or any other alternative

form of compensation for his injury, loss, or damage. See 18 U.S.C. § 3664(f)(1)(B) ("In no case

shall the fact that a victim has received or is entitled to receive compensation with respect to a

loss from insurance or any other source be considered in determining the amount of restitution.");

Cienfuegos, 462 F.3d at 1168 (civil litigation); United States v. Ruff, 420 F.3d 772, 774 (8th Cir.

2007) (forfeiture); but see United States v. McCracken, 487 F.3d 1125, 1128-29 (8th Cir. 2007)

(holding that the amount of restitution might include money the government seized from the

defendant bank robber when he was arrested and had yet to turn over to the bank or the court, but

assumed that when it did so the amount of restitution owed would be reduced accordingly). The

Court of Appeals for the Ninth Circuit has explained this provision in its application to forfeiture

funds:

> Relying on the older version of the statute, we held in United States v.
> Johnston, 199 F.3d 1015 (9th Cir. 1999), that a district court is required to consider
> other sources of compensation to victims to avoid double recovery, including money
> forfeited by the defendant. The version of the Victim and Witness Protection Act
> then applicable provided that a court could not "impose restitution with respect to a
> loss for which the victim has received or is to receive compensation." 18 U.S.C. §
> 3663(e)(1) (1995). The new version of the restitution statute, by contrast, provides:
> "In no case shall the fact that a victim has received or is entitled to receive
> compensation with respect to a loss from insurance or any other source be considered
> in determining the amount of restitution." 18 U.S.C. § 3664(f)(1)(B).
>
> We recently held that this language requires a district court to set the amount
> of the defendant's restitution obligation "in the first instance" without regard to
> forfeited funds. United States v. Bright, 353 F.3d 1114, 1122 (9th Cir. 2004). Where
> victims covered by a restitution order later recover "compensatory damages" in a
> civil proceeding for the same loss, the restitution order is accordingly reduced. Id.
> Bright leaves open the possibility that disbursements to victims from forfeited funds
> could be construed as "compensatory damages" within the meaning of the statute.

Id. at 1122-23. It makes clear, however, that offsetting a restitution order by the value of forfeited funds is not permitted where victims have not received compensation from those funds. Id. at 1123.

United States v. Doe, 374 F.3d 851, 856 (9th Cir. 2004).

The instant case is not a forfeiture case except perhaps for some relatively small amounts provided for in the various plea agreements. As to these forfeiture funds, it may be that an offset can be allowed.

The Court of Appeals for the Eighth Circuit has held that 18 U.S.C. § 3663A does not entitle a victim to obtain double recovery through restitution as to forfeiture. See United States v. Ruff, 420 F.3d 772 (8th Cir. 2005) ("Ruff I"). In Ruff I, a defendant who had pled guilty to conspiracy to distribute cocaine and marijuana, had also agreed to forfeit his vehicle and other belongings to the Narcotics Task Force. Id. at 772-73. At sentencing, the district court ordered the defendant to pay restitution and rejected the defendant's "argument [that] the net proceeds realized from the forfeiture of his property should be applied toward restitution." Id. at 773. The following language by the Court of Appeals is instructive:

> In ordering restitution pursuant to the MVRA, a district court must order restitution in full without considering the defendant's economic circumstances. See 18 U.S.C. § 3664(f)(1)(A). Ruff does not object to paying restitution, but contends he is entitled to offset any proceeds law enforcement derived from the forfeited property, which have been remitted by the Department of Justice's Asset Forfeiture Fund. Although the MVRA does not specifically address the relationship between restitution and forfeited funds, the MVRA does address the relationship between restitution and other sources of funds. Section 3664(f)(1)(B) declares: "In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." 18 U.S.C. § 3664(f)(1)(B) (emphasis added). Based on the plea agreement (wherein Ruff agreed to pay restitution for controlled buy money) and the plain language of this statutory subsection, we conclude the district court was required to order restitution based on the total funds the Iowa [Division of Narcotics Enforcement] expended on controlled buys, which the parties stipulated amounted to $9,985.

13

The question remains, however, whether Ruff is entitled to offset the restitution assessment by the proceeds received from the administrative forfeiture proceedings. Several circuits have discussed whether the MVRA provides for restitution payments to be offset against amounts forfeited to the government. See Bright, 353 F.3d at 1122 (declaring "it is clear from the plain language of the statute that the district court was required in the first instance to set the amount of Bright's restitution obligation based on his victims' collective losses and without regard to forfeited funds"); [United States v.] Alalade, 204 F.3d [536,] 540 [(4th Cir. 2000)] (declaring plain language of MVRA "did not grant the district court discretion to reduce the amount of restitution required to be ordered by an amount equal to the value of the property seized from Alalade and retained by the government in administrative forfeiture"); United States v. Leon-Delfis, 203 F.3d 103, 116 (1st Cir. 2000) (declaring "language of the . . . statutes regarding restitution is plain and allows the district court no discretion"); United States v. Emerson, 128 F.3d 557, 566-67 (7th Cir. 1997) (declaring sentencing court has statutory authority to impose both restitution and forfeiture, and there is no legal authority to offset one from the other) (discussing United States v. Various Computers & Computer Equip., 82 F.3d 582, 586-89 (3d Cir. 1996)).

However, in none of these cases was restitution payable to a law enforcement agency; nor did the courts rule a "victim" is entitled to obtain double recovery from a convicted defendant through forfeiture and restitution payments. In fact, in Alalade, the Fourth Circuit noted, "we need not decide, and we express no opinion on, the effect upon the district court's calculation of the full amount of a victim's loss under the MVRA when the victim receives property or cash from the Department of Justice through its remittance program involving property or cash seized by the government in administrative forfeiture in connection with the case." Alalade, 204 F.3d at 541 n. 5. Similarly, in Bright, the Ninth Circuit did not decide "[what] offsets might be due when a defendant's funds have been forfeited and paid to the victims." Bright, 353 F.3d at 1122-23.

In this case, Ruff contends law enforcement received or will receive proceeds from the administrative forfeitures of the Blazer and currency. Thus, Ruff argues law enforcement stands to receive a windfall in excess of the actual amount it expended on controlled buys, thereby constituting impermissible double recovery. In support of this theory, Ruff cites two pre-MVRA cases for the legal proposition that victims of crime are not entitled to double recovery for the same loss. See United States v. Manzer, 69 F.3d 222 (8th Cir. 1995); United States v. Gaultier, 727 F.2d 711 (8th Cir. 1984). . . .

Our holdings in Manzer and Gaultier are consistent with the later-enacted MVRA provision requiring "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in – (A) any Federal civil proceeding; and (B) any

14

State civil proceeding, to the extent provided by the law of the State." 18 U.S.C. § 3664(j)(2). By its plain language this section applies to compensatory damages recovered by a victim in a civil proceeding after a court enters a restitution order. See United States v. Smith, 297 F. Supp. 2d 69, 73 (D.D.C. 2003). Although we doubt, without deciding, that proceeds recovered from administrative forfeiture proceedings qualify as "compensatory damages" under the restitution statutes, we nonetheless conclude the bar against double recovery should operate in the context of this case to preclude the Iowa DNE from recovering an amount greater than the agency expended on controlled drug buys in Ruff's case. See id. (ruling when funds forfeited to the government have been returned to the victim, they must be offset against the amount of restitution due; otherwise, there would be excess recovery).

Ruff I, 420 F.3d at 774-75 (footnotes omitted).

On remand, the district court found that Iowa's Division of Narcotics Enforcement had not received any forfeiture funds because it was a separate and distinct entity from the local Narcotics Task Force, even though some of the same agents worked for both. See United States v. Ruff, No. 03-CR-1027, 2006 WL 274433 (N.D. Iowa 2006) ("Ruff II"). See also United States v. Wright, 176 Fed. Appx. 373 (4th Cir. 2006) (holding that there is no deduction in restitution for stolen items which were returned); Alalade, 204 F.3d 536 (holding that a district court has no discretion under the MVRA to order a defendant to pay restitution in an amount less than the full amount of each victim's loss, by allowing an offset for the value of fraudulently obtained property [in effect a forfeiture] the government seized from the defendant and retained in administrative forfeiture); United States v. Ramsey, 130 Fed. Appx. 821 (7th Cir. 2005) (holding that restitution for purchasing used cars with fraudulent checks was properly the actual loss created and that the district court did not err in failing to offset the restitution amount by the value of the cars recovered by the victims).

The Court of Appeals for the Second Circuit has addressed the issue of whether the victim may receive a "windfall" in criminal restitution – but only in the contexts of resale of

property at a nominal price above the fair market value and several liability among co-defendants. See United States v. Boccagna, 450 F.3d 107 (2d Cir. 2006) (resale of property); United States v. Nucci, 364 F.3d 419, 422-23 (2d Cir. 2004) (joint and several liability).

In Boccagna, the defendant argued that a government agency which provided loans for housing development was "not entitled to any restitution award because its loss was fully compensated by the fair market value of the foreclosure properties to which it acquired title." Boccagan, 450 F.3d at 112. The Court of Appeals stressed the importance of restitution and its purpose: "it can fairly be said that the primary and overreaching purpose of the MVRA is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original well-being." Id. at 115 (quotation marks and citations omitted). The court further noted that "the MVRA does not permit awards in excess of the amount of the victim's loss." Id. at 117 (quotation marks and citations omitted). The court concluded that the MVRA "does not permit award in excess of the amount of the victim's loss . . . and a sentencing court cannot order restitution that goes beyond making the victim whole." Id. (quotation marks, citations and brackets omitted). Boccagna is distinguishable from the instant case. The amount already received by some restitutees was not based on a court's award in restiuttion; no such award has yet been made in the instant case.

In Nucci, the defendant argued that the district court erred in two ways: (1) when it "fail[ed] to apportion liability among the co-defendants based on their relative culpability"; and (2) "the failure to offset the restitution to be paid by the co-defendants creates the possibility that a victim could receive a windfall by being overcompensated." Id. at 422. Nucci is distinguishable because a double recovery was due to the court's award of repetitive recoveries

16

against defendants. A double recovery in the instant case would result from a voluntary payment by a third non-defendant party. Relative culpability in the instant case will be considered at the appropriate time.

According to the court in <u>Nucci</u>:

> We base our holding on the common law background against which Congress is presumed to legislate. At common law, joint and several liability does not permit double recovery. As we have held, "[t]he effect of joint liability in a tort context is to excuse one defendant from paying any portion of the judgment if the plaintiff collects the full amount from the other." Because reading the statute to provide recovery in excess of the amount of the loss would be in derogation of the common law, Congress would have to speak clearly and unequivocally to authorize it. Congress has not done so here; accordingly, we apply the common law rule.

> The situation presented in this case, where one defendant was ordered to pay the full loss from five burglaries after his co-defendants had been ordered to pay restitution for some but not all of the burglaries, is but a variation on the same general theme of no double recovery upon orders of joint and several liability. While the district judge could have made it clearer in her restitution order that a given victim would not be allowed to receive compensation in excess of his loss, and probably should have in order to remove the question from all doubt, we will not find error for any failure to do so because, in any event, absent a statutory command, there is no legal basis to permit an award that allows a victim to recover more than his due. We read the First Circuit's decision in <u>United States v. Scott</u> as following essentially the same reasoning.

> The district court's decision to hold Nucci accountable for the entire $34,476 is in accordance with the MVRA's rules regarding apportionment of liability. Accordingly, we affirm the district court's decision not to apportion the restitution amount and hold that a district court does not commit error by failing to state explicitly that a victim's recovery shall be limited to the amount of its loss.

<u>Id.</u> at 423-24 (citations omitted).

Both <u>Boccagna</u> and <u>Nucci</u> focused on whether a district court may order a defendant in a criminal case to make double payments to a victim, and not whether a voluntary payment to the government or an injured person by a non-indicted party makes restitution non-mandatory under

18 U.S.C. § 3663A for the indicted defendants. See also United States v. Rodriguez, No. 06-CR-1681, 2007 WL 4201353 (2d Cir. 2007) (summary order) (holding that the Internal Revenue Service could not obtain a double recovery from both defendant his taxpayer clients).

Section 3664(j)(1) of Title 18 provides that "[i]f a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.." 18 U.S.C. § 3664(j)(1). Under § 3664(j)(2), restitution paid to a victim under an order of restitution "shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in" federal or state civil proceedings. 18 U.S.C. § 3664(j)(2) (emphasis added); it does not cover earlier recoveries.

In Cienfuegos, the court noted that "under the MVRA the availability of a civil suit can no longer be considered by the district court in deciding the amount of restitution." 462 F.3d at 1168. The Court of Appeals for the Sixth Circuit has held that "a private settlement between a criminal wrongdoer from further liability does not preclude a district court from imposing restitution order for the same underlying wrong." United States v. Bearden, 274 F.3d 1031, 1041 (6th Cir. 2001). The following discussion from the Bearden decision which summarizes the law from other circuits is helpful:

> Bearden's argument is not exactly that the district courts restitution was unlawful, but rather that the release executed by [the victim] precluded the district court from ordering criminal restitution. . . . The other circuits, however, have generally held that "a release by the victim does not preclude or cap restitution of losses as part of criminal sentencing in a case where there is no double recovery." United States v. Parsons, 141 F.3d 386, 393 (1st Cir. 1998) (citing United States v.

Savoie, 985 F.2d 612, 619 (1st Cir. 1993)); see also United States v. Sheinbaum, 136 F.3d 443, 448 (5th Cir. 1998) (concluding "that district courts possess the discretion to impose restitution orders in spite of civil settlements" because of "the rehabilitative and retributive functions" of restitution), cert. denied, 526 U.S. 1133, 119 S. Ct. 1808, 143 L.Ed.2d 1011 (1999); United States v. Vetter, 895 F.2d 456, 459 (8th Cir. 1990) (holding that a district court may order restitution despite a settlement agreement); United States v. Hairston, 888 F.2d 1349, 1355 (11th Cir. 1989) (holding that the dismissal of a civil action in state court does not preclude a restitution order on the same claim); United States v. Cloud, 872 F.2d 846, 854 (9th Cir.) ("[D]espite the existence of settlement agreements among the parties, the district court was authorized . . . to order Cloud to pay restitution to the insurance company in this case."), cert. denied, 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989).

The courts that have reached this conclusion cite Kelly v. Robinson, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), for the general proposition that restitution ordered as part of a criminal sentence is punitive rather than compensatory in nature. "Although restitution does resemble a judgment 'for the benefit of' the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution." Id. at 52, 107 S.Ct. 353. See also, e.g., Sheinbaum, 136 F.3d at 448. Thus, private individuals should not be allowed to thwart the penal goals of the criminal justice system by entering into releases or settlements with wrongdoers. "Private parties cannot simply agree to waive the application of a criminal statute. . . . [T]he law will not tolerate privately negotiated end runs around the criminal justice system." Savoie, 985 F.2d at 619 (citations omitted).

[A]s the Supreme Court indicated in Kelly, the purposes of criminal restitution include punishment. It would be improper to permit private parties to release criminal wrongdoers from punishment.

Id. at 1041-42.

## IV.

From the outset of these cases when the court began receiving presentence reports as to each defendant, it asked the government to consider the restitution as mandated by the MVRA. Yet, even to this date – a day before the December 20, 2007 sentencing – the relevant issues have remained unaddressed. With the background to mandatory criminal restitution as outlined above, the government is directed to respond to the following questions at sentencing scheduled for

19

December 20, 2007.

1. Is restitution mandatory in this case?  <u>See</u> 18 U.S.C. § 3663A(c)(1)(A)(iii).

2. Why has probation and the government not yet provided a list of those defrauded and the amounts they were defrauded (to the extent practicable) so mandatory restitution can be ordered?

3. Is each defendant jointly and severally responsible for the total restitution; is there good reason to allocate restitution individually?  <u>See</u> 18 U.S.C. § 3664(h).  How shall restitution be allocated if not jointly and severally?

4. Arrangements for installment payments can be provided for where necessary.  <u>See</u> 18 U.S.C. § 3664(f)(3)(A).  How shall lump sum and installment payments be provided for as to individual defendants?

5. Is it accurate that payments by third parties (prior to the court's direction at sentencing and within the 90 days), i.e., Newsday, Hoy and the Tribune, to those defrauded do not constitute restitution under the statute?  <u>See</u> <u>supra</u> III, C; 18 U.S.C. § 3664(f)(1)(B).  Explain.

6. Does the fact that 5, above, may result in a "windfall" to those defrauded excuse application of the statute?  Explain.

7. Why should the court not be provided with a date when it will have the necessary list of restitutees and amounts so sentencing can go forward?  If the list is not yet available, what arrangements are being made to provide the list?  If further investigation or a hearing is required, the parties and probation shall indicate how the case should proceed as to restitution.

8.    Until the court is satisfied that the mandatory restitution is being complied with, why should sentencing not be postponed?

9.    Is advertisement of the availability of restitution by computer technology sufficient to alert those entitled to restitution?  Have the parties considered advertisements in Newsday and Hoy with a simplified application form for those advertisers who overpaid for advertisements due to the fraud?

10.   Are there any other questions the parties should address?


SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: December 19, 2007
       Brooklyn, New York